UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JILLIAN HOAG,

                                        Plaintiff,

                                                                    No. 14-CV-10238 (CS)
                – against –
                                                                    **OPINION & ORDER**


FALLSBURG CENTRAL SCHOOL DISTRICT,

                                        Defendant.

------------------------------------------------------------------------x

<u>Appearances</u>:

Justin S. Clark
Matthew J. Blit
Lewis G. Spicer
Levine & Blit, PLLC
New York, New York
*Counsel for Plaintiff*

Adam L. Rodd
Drake Loeb PLLC
New Windsor, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

        Before the Court is Defendant's motion for summary judgment.  For the reasons stated

below, the motion is GRANTED.

# I. BACKGROUND

## A. Facts[1]

Plaintiff Jillian Hoag was hired by Defendant Fallsburg Central School District (the "District") in 2008.  (Doc. 44 ("P's 56.1 Resp.") ¶ 5.)  She was initially hired as a leave replacement teacher for seventh grade English at the District's Junior/Senior High School ("JSHS"), which houses seventh through twelfth grades.  (*Id.* ¶¶ 6-7.)  Michael Williams, the principal of the JSHS, participated in Plaintiff's 2008 interview and recommended that the District hire her.  (*Id.* ¶ 8.)  During the 2008/2009 school year, Plaintiff worked as a leave replacement teacher in seventh grade English, eighth grade English, and math/science/technology, and as a substitute teacher and either an aide or a teacher's aide.  (*Id.* ¶ 9.)  From September 2009 to March 2010, Plaintiff worked as a front desk aide.  (*Id.* ¶ 10.)  In March 2010, Principal Williams interviewed Plaintiff and recommended her for an open teacher's assistant position.  (*Id.* ¶¶ 11-12.)  The District hired her as a teacher's assistant, and Plaintiff held this position from March 2010 through the 2011 school year.  (*Id.* ¶¶ 13-14.)  During the 2010/2011 school year, Plaintiff did not perform any extracurricular hourly or stipend duties.  (*Id.* ¶ 15.)

During the summer of 2010, Plaintiff began a romantic relationship with math teacher Daniel Redmond, (*id.* ¶ 16), which relationship she ended in February or March 2011, (*id.* ¶ 17).  After Plaintiff ended the relationship, Plaintiff alleged that Redmond engaged in a pattern of harassment toward her that included:  entering Plaintiff's classroom while she was teaching; leaving notes on her computer; blocking Plaintiff's path if she did not answer his questions;

---

[1] The facts are undisputed unless otherwise noted, and are taken from the parties' Local Rule 56.1 submissions unless otherwise noted.

trying to kiss Plaintiff; and sending Plaintiff text messages threatening to expose their relationship. (*Id.* ¶ 18.)

Plaintiff complained to School Resource Officer Robert Noller in March 2011 and asked him to advise Redmond to give Plaintiff space and not enter her classroom. (*Id.* ¶ 19.) Noller notified Superintendent Ivan Katz about Plaintiff's complaint against Redmond, (*id.* ¶ 20; Doc. 31 ("Katz Aff.")), and Katz immediately placed Redmond on a leave of absence, (P's 56.1 Resp. ¶ 21). Katz, together with other District administrative personnel, investigated Plaintiff's allegations of Redmond's harassment, including conducting interviews with Plaintiff, Redmond, and other witnesses. (*Id.* ¶ 22.) Katz concluded that Plaintiff's allegations were founded. (*Id.* ¶ 23.) As a result, on March 16, 2011 the District's Board of Education rescinded its grant of tenure to Redmond based on its finding of inappropriate conduct on his part. (*Id.* ¶ 26.)[2] On March 21, 2011, Katz issued Redmond a formal written reprimand, which was placed in Redmond's permanent personnel file. (*Id.* ¶ 27; Doc. 35 Ex. M.) The formal reprimand: indicated that Redmond's classroom would be moved away from Plaintiff's classroom; instructed Redmond not to communicate with Plaintiff "unless and until she indicates a willingness to communicate;" required Redmond to attend harassment training specified by the District; and warned Redmond that "any additional incidents may well subject you to further disciplinary sanctions, up to and including discharge." (Doc. 35 Ex. M at 2.) Redmond stopped harassing Plaintiff, and Plaintiff did not ask anyone from the District to take further action. (P's 56.1 Resp. ¶ 29.)

---

[2] The District had awarded Redmond tenure on March 2, 2011, before it or Katz learned of Plaintiff's allegations. (*Id.* ¶ 25.)

In March or April 2011, Principal Williams made a comment to Plaintiff to the effect of that if this were fifty years ago, the woman (Plaintiff) would have been fired and the man would have been brought back. (Doc. 42 ("D's 56.1 Reply") ¶ 81.)[3]

In June 2011, Plaintiff complained to Principal Williams and Ilona Lindsey, the school nurse and Plaintiff's union representative, (Doc. 33 ("Lindsey Aff.") ¶¶ 1, 3; P's 56.1 Resp. ¶ 39), regarding derogatory comments about Plaintiff made by female players on the basketball team coached by Redmond, (P's 56.1 Resp. ¶¶ 30, 32(a)). That same month, Principal Williams spoke with the players involved and told them to stop making disparaging comments about Plaintiff, (*id.* ¶ 31), and Lindsey told them that their comments were inappropriate, (*id.* ¶ 32(a)). The players' comments stopped, (*id.* ¶ 33(a)), and Plaintiff did not complain to Principal Williams again regarding their conduct, (*id.* ¶ 32(b)).

On her performance evaluation for the 2010/2011 schooxl year, Plaintiff received the highest score ("outstanding, exceptional, above standards") for seventeen out of eighteen categories, and the second highest score ("consistently meets standards") for the remaining category. (Doc. 35 Ex. P.) The evaluation stated that Plaintiff "works effectively with staff and students" and that she "is helpful and cares about the academic success of her students." (*Id.* at 2.)

Plaintiff continued as a full time teacher's assistant for the 2011/2012 school year. (P's 56.1 Resp. ¶ 34.) She applied for and was selected to work additional hours as an extended-day teacher, as well as in the stipend position of class advisor. (*Id.* ¶¶ 35-36.)

---

[3] This statement appears in Plaintiff's Counterstatement of Facts, (P's 56.1 Resp. ¶¶ 80-96), and while Defendant responded to Plaintiff's Counterstatement, it did not address this particular allegation, (D's 56.1 Reply ¶ 81). Accordingly, I will deem it undisputed for the purposes of this motion because it is properly supported by citation to the record. *Cf. Gadsden v. Jones Lange Lasalle Ams., Inc.*, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) ("Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 Statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party."); *see also* Fed. R. Civ. P. 56(e).

Stephen Javone, a ninth grade English Language Arts teacher, retired on June 30, 2012, and his position was subsequently eliminated.  (D's 56.1 Reply ¶ 86; Doc. 32 ("Evans Aff.") ¶ 3.)  In his affidavit, Assistant Superintendent Matthew Evans stated that it is District protocol to eliminate a vacant teaching position if it is no longer needed, (Evans Aff. ¶ 3), and that Javone's former position was not needed to meet the requirements established by the New York State Education Department, (*id.*; D's 56.1 Reply ¶ 56).  Plaintiff contends, however, that the District had a budget surplus at the time.  (*See* Doc. 45 Ex. I ("Katz Dep.") at 27-28.)  She never indicated interest in Javone's position because she felt that if she were "to put in for any position now, they wouldn't hire [her]."  (Doc. 35 Ex. G ("P's Dep.") at 88-89.)

At some point during the fall of 2012, custodian Remington Parker told Plaintiff that Parker's supervisor, Jay Shapiro, told Parker to stay away from Plaintiff because she liked to get people fired.  (P's 56.1 Resp. ¶ 37.)  Principal Williams and Superintendent Katz both stated in their affidavits that Plaintiff did not report Shapiro's or Parker's comments to them in the fall of 2012, (Doc. 30 ("Williams Aff.") ¶ 13; Katz Aff. ¶ 27), and Williams stated that Plaintiff never reported the comments to him at all, (Williams Aff. ¶ 13).  Plaintiff informed union representative Lindsey about the comments, but did not request that Lindsey do anything in response.  (P's 56.1 Resp. ¶ 39.)  After her complaint to Lindsey, Plaintiff was not aware of any other similar comments by Shapiro.  (*Id.* ¶ 40.)

Plaintiff testified that in September or October 2012, Principal Williams began appearing at her classroom and "checking to see if [she] was where [she] was supposed to be."  (P's Dep. at 42-43.)  Plaintiff asked Williams about his conduct, and he replied that he was checking on her based on another employee's report to him that Plaintiff had been leaving work early.  (P's 56.1

Resp. ¶ 42.)  Plaintiff never filed a complaint or grievance regarding Williams's behavior, and she did not suffer any decrease in salary or benefits as a result.  (*Id.* ¶ 43.)

On December 5, 2012 the District's Board of Education voted to grant Plaintiff tenure as a teacher's assistant, effective January 24, 2013.  (*Id.* ¶ 44.)

During the 2012/2013 school year, Plaintiff applied for and was selected to work additional hours as an extended-day teacher and at the stipend position of Class Advisor.  (*Id.* ¶¶ 45-46.)  Plaintiff received a favorable performance review at the end of the 2012/2013 school year.  (*Id.* ¶ 47.)

From March or April to June 2013, Plaintiff noticed that Superintendent Katz would check in on her while she used the District's weight room.  (*Id.* ¶ 48.)  The District had a policy requiring anyone using the weight room to be accompanied by another.  (*Id.* ¶ 49.)  Plaintiff was never reprimanded or written up for her use of the weight room, and did not suffer a decrease in salary or benefits as a result.  (*Id.* ¶ 50.)  She never filed any complaints regarding Katz's checking on her use of the weight room.  (*Id.* ¶ 51.)  Katz stated in his affidavit that because his office was near the weight room, when he heard the machines being used he would check to make sure the policy was being followed, but never singled Plaintiff out.  (Katz Aff. ¶ 16.)

On September 9, 2013, Plaintiff informed her union representative Lindsey and Principal Williams that her schedule afforded her insufficient break time, (*id.* ¶ 52), and Williams corrected the issue that same day, (*id.* ¶ 53).

Also in September 2013, the District was investigating Redmond for issues regarding inappropriate contact with students.  (*Id.* ¶ 55.)  Redmond was placed on administrative leave for the duration of the investigation.  (Williams Aff. ¶ 29.)  The District requested to interview Plaintiff as part of this investigation, (*id.* ¶ 23), but Plaintiff refused to cooperate and complained

to Lindsey, Principal Williams, and Superintendent Katz, (P's 56.1 Resp. ¶ 56). On September 22, 2013, Plaintiff emailed Williams and Katz, stating that she felt that "being dragged into" the new investigation of Redmond was retaliation "for speaking up and saying something about the hostile work environment . . . created by" Redmond's harassment of her. (Doc. 35 Ex. DD.) After learning that Plaintiff would not participate in the District's investigation of Redmond, Williams made a comment to the effect that it was not good for Plaintiff to refuse to cooperate with the District and that Plaintiff had "burned her bridges." (D's 56.1 Reply ¶ 91; Doc. 45 Ex. G ("Lindsey Dep.") at 22-23.) Williams stated in his affidavit that this comment "reflected [his] disappointment in the fact that [Plaintiff] objected to participating in the 2013 investigation of Redmond." (Williams Aff. ¶ 25.)

Assistant Superintendent Michael Evans was assigned to review Plaintiff's complaint, (P's 56.1 Resp. ¶ 58), and issued a report of his findings on November 25, 2013, (*id.* ¶ 59; Doc. 35 Ex. EE). The District also retained an outside human resources specialist, David Smith, to investigate Plaintiff's allegations of discrimination and retaliation. (P's 56.1 Resp. ¶ 60.) Both concluded that Plaintiff had not been subjected to discrimination or retaliation. (*Id.* ¶¶ 59, 61; Doc. 35 Exs. EE, FF.)

On November 20, 2013, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (P's 56.1 Resp. ¶ 62; Doc. 35 Ex. B ("EEOC Charge").)

Sometime during the spring of 2014 after Redmond had returned to work, he was scheduled for lunch duty at the same time as Plaintiff. (P's 56.1 Resp. ¶ 76.) Redmond did not harass her during lunch duty, (*id.* ¶ 77), and Plaintiff did not complain to any District administrator about the scheduling, (*id.* ¶ 78.) Plaintiff testified, however, that because Williams

"had made it clear that he did not want [her] coming hear him," she complained to her union representative, Lindsey, instead. (P's Dep. at 87.)

At the end of the 2013/2014 school year, a teacher's assistant at the elementary school needed to be transferred to the JSHS because of an allergy problem she had at the elementary school. (P's 56.1 Resp. ¶ 63.) As a result, the District needed to transfer a teacher's assistant from the JSHS to the elementary school. (*Id.* ¶ 64.) When asked by union representative Lindsey, no teacher's assistants at the JSHS volunteered for the transfer. (*Id.* ¶ 65.)[4] Principal Williams stated in his affidavit that he advised Assistant Superintendent Evans that no one had volunteered for the transfer, (Williams Aff. ¶ 30; *see* Doc. 32 ("Evans Aff.") ¶ 13), and Evans selected Plaintiff for the transfer, (P's 56.1 Resp. ¶ 67). Williams was not involved in the selection of Plaintiff. (Williams Aff. ¶ 30.) At the time, Plaintiff was the only teacher's assistant at the JSHS who had teaching certifications in both literacy and English. (P's 56.1 Resp. ¶ 68.)[5] Evans stated in his affidavit that he selected Plaintiff for the transfer because she was the most qualified to address the elementary school's literacy needs at the time. (Evans Aff. ¶ 14.) On August 17, 2014, Evans advised Plaintiff that she would be transferred from the JSHS to the elementary school and would hold her same position of teacher's assistant. (P's 56.1 Resp. ¶ 70.)

---

[4] Plaintiff testified that another teacher's assistant, Michelle Kenney, told Plaintiff that she had volunteered to go to the elementary school. (Doc. 45 Ex. F at 65.) Kenney stated in her affidavit, however, that she at no time volunteered for the transfer. (Doc. 34 ¶ 3.) Plaintiff's testimony suggesting the contrary is insufficient to create a fact issue because it is hearsay, and therefore must be disregarded on summary judgment. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010); *Hollander v. Am-Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999), *abrogated in part on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). It is undisputed that the decisionmaker was told that nobody had volunteered. (P's 56.1 Resp. ¶ 66.)

[5] In response to several of Defendants' stated facts, Plaintiff responds that she "denies knowledge or information sufficient to form a belief as to" that fact, or a part thereof. (P's 56.1 Resp. ¶¶ 68, 69.) Plaintiff had the opportunity to take discovery as to any facts of which she did not have sufficient personal knowledge, and any properly supported facts she failed to properly address in her 56.1 response I deem undisputed for purposes of the instant motion. *See Gadsden*, 210 F. Supp. 2d at 438.

Plaintiff worked as a teacher's assistant for the 2014/2015 and 2015/2016 school years before resigning at the end of the 2015/2016 year. (*Id.* ¶ 71.) During those two years, the elementary school's extended-day program ran for two hours – before school from 8:00 am to 9:00 am and after school from 4:00 pm to 5:00 pm – while the JSHS's extended-day program ran only for one hour and forty-five minutes after school. (*Id.* ¶¶ 74-75.) Plaintiff stated in her affidavit, without further explanation, that she could not work the morning extended hour session in the elementary school "because of the position [she] had there." (Doc. 46 ("Hoag Aff.") ¶ 10.) The elementary school's principal, Mary Kate Stinehour, stated in her affidavit, however, that Plaintiff's position did not prevent her from working the 8:00 am to 9:00 am extended hour because her position only required her to work from 9:00 am to 4:00 pm. (Doc. 41 ("Stinehour Aff.") ¶ 2-3.) Further, Stinehour was not aware of Plaintiff ever raising this issue to her or anyone else at the elementary school. (*Id.* ¶ 3.)

Plaintiff received annual salary increases from the 2010/2011 through 2015/2016 school years, (P's 56.1 Resp. ¶ 72), and her salary and benefits were never cut or reduced during that time, (*id.* ¶ 73).

## B.  Procedural History

Plaintiff initiated this action by filing a complaint on December 31, 2014, alleging claims for sex discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL"). (Doc. 1.) Plaintiff amended her complaint on March 2, 2015, alleging the same violations, (Doc. 6), and Defendant answered on June 5, 2015, (Doc. 8). Defendant filed the instant motion, (Doc. 28), following discovery.

## II.  <u>DISCUSSION</u>

### A.  Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

## B. Discrimination

"Title VII prohibits an employer from discriminating 'against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 209 (E.D.N.Y. 2014) (alteration in original) (quoting 42 U.S.C. § 2000e-2(a)(1)). I will address Plaintiff's claims for discrimination under Title VII and the NYSHRL together because they are analyzed using the same framework. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) ("The identical standards apply to employment discrimination claims brought under Title VII . . . [and] New York Executive Law § 296 . . . ."); *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992) (noting "New York's wholesale adoption of federal standards in discrimination cases under Executive Law § 296"); *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011)

("The standard for showing a hostile work environment under Title VII . . . and the New York State Human Rights Law is essentially the same.").  "A plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment."  *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004).

    1.  <u>Adverse Job Actions</u>

Plaintiff argues that she was subjected to disparate treatment on account of her sex based on four actions:  (1) Superintendent Katz "consistently questioned" her about her gym usage; (2) Principal Williams "excessively monitored" her workplace conduct; (3) the District failed to promote Plaintiff when a male teacher retired in 2012; and (4) Plaintiff was transferred from the JSHS to the elementary school.  (Doc. 47 ("P's Mem.") at 6.)[6]

Discrimination claims under Title VII and the NYSHRL are assessed using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination by showing that she was:  (1) a member of a protected class, (2) qualified for the position, and (3) subjected to an adverse employment action (4) under circumstances giving rise to an inference of

---

[6] Title VII requires plaintiffs to file an EEOC complaint within 300 days of the alleged act of discrimination.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015).  Discrete acts of discrimination, such as a failure to promote, occur for purposes of the statute of limitations on the day they happened.  *Id.* at 79  Plaintiff filed her EEOC Complaint on November 20, 2013, so to the extent Plaintiff argues discrete acts of discrimination rather than a hostile work environment, her claims arising out of acts that occurred before January 24, 2013 are time barred.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); *Vega*, 801 F.3d at 79 (affirming dismissal of claims arising out of discrete acts of discrimination that occurred before 300 day period).  Accordingly, even if Plaintiff could establish a *prima facie* case of discrimination with respect to the failure to promote her in 2012 (which she cannot), it would be time barred.

discrimination. *See Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002). "If the plaintiff satisfies this initial burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Bowen-Hooks*, 13 F. Supp. 3d at 210. "If the employer is able to satisfy that burden, the inquiry then returns to the plaintiff, to demonstrate that the proffered reason is a pretext for discrimination." *United States v. City of N.Y.*, 717 F.3d 72, 102 (2d Cir. 2013).

Defendant argues that Plaintiff cannot establish a *prima facie* case because she has not suffered an adverse employment action. In the context of a disparate treatment claim, an adverse employment action is one that constitutes "a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (emphasis and internal quotation marks omitted). "Such action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Bowen-Hooks*, 13 F. Supp. 3d at 211 (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)). "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Feingold*, 366 F.3d at 152 (alteration, citation, and internal quotation marks omitted). "[A] 'bruised ego,' a 'demotion without change in pay, benefits, duties, or prestige,' or 'reassignment to a more inconvenient job' are all insufficient to constitute a tangible or materially adverse employment action." *Hayle v. Nassau Health Care Corp.*, No. 08-CV-2396, 2013 WL 6231164, at *5 (E.D.N.Y. Dec. 2, 2013) (alteration omitted) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

First, the District's failure to promote Plaintiff when Javone retired in 2012 does not amount to an adverse employment action. To establish a *prima facie* case on a failure to promote theory, a plaintiff must show, among other things, that "she applied for an available position." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). It is undisputed that the position was eliminated, (D's 56.1 Reply ¶ 86), and therefore "there was no position to be filled," *Broughton v. Conn. Student Loan Found.*, 64 F. Supp. 2d 64, 67 (D. Conn. 1999). "Courts routinely grant motions for summary judgment when the underlying position at issue is completely eliminated." *Hayden v. Cisco Sys., Inc.*, No. 12-CV-464, 2014 WL 4364900, at *6 (D. Conn. Sept. 2, 2014); *see Williams v. Ford Motor Co.*, No. 12-CV-411, 2014 WL 1572302, at *16 (W.D.N.Y. Apr. 17, 2014) (elimination of position that plaintiff desired was not adverse employment action against her); *Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F. Supp. 2d 378, 399 (S.D.N.Y. 2012) ("[G]ranting summary judgment on a failure to promote claim is proper when the position has been eliminated."). The District's decision not to replace Javone with Plaintiff was not an adverse employment action.[7]

Next, Katz's questioning of Plaintiff about her gym usage and Williams's allegedly excessive monitoring of Plaintiff's classroom do not rise to the level of adverse employment actions. It is undisputed that Plaintiff was not disciplined and did not suffer any consequence from Katz's questioning of her gym use, (P's 56.1 Resp. ¶ 50), and Plaintiff never filed any complaints regarding Katz's behavior, (*id.* ¶ 51). Likewise, there is no evidence that Williams's

---

[7] In any event, Plaintiff never expressed any interest in Javone's position, let alone submitted an application. (*See* P's Dep. at 88-89.) *See Petrosino v. Bell Atl.*, 385 F.3d 210, 226-27 (2d Cir. 2004) ("A specific application is required to ensure[] that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer.") (alteration in original) (internal quotation marks omitted); *id.* at 227 (specific application requirement not excused "simply because an employee asserts that an 'aura of discrimination' in the workplace somehow discouraged her from filing a formal application"); *cf. Ciulla-Noto v. Xerox Corp.*, No. 09-CV-6451, 2012 WL 6043882, at *7 (W.D.N.Y. Dec. 5, 2012) ("Because plaintiff never applied for the positions she was allegedly prevented from obtaining, she can not state a claim for retaliatory failure to hire."), *aff'd*, 563 F. App'x 791 (2d Cir. 2014) (summary order).

checking in on Plaintiff, even if "excessive," was accompanied by any discipline or employment consequence.  (*See id.* ¶ 43.)  Mere inconveniences like these do not constitute adverse employment actions unless they are accompanied by "some attendant negative result, such as a deprivation of a position or opportunity."  *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 354-55 (S.D.N.Y. 2006) (alteration and internal quotation marks omitted).  Because Plaintiff has offered no evidence of such a negative result beyond feeling slighted or inconvenienced, Katz's and Williams's actions do not amount to adverse employment actions.  *See Bowen-Hooks*, 13 F. Supp. 3d at 216-17 (being "singled out for excessive scrutiny and discipline" was not adverse employment action); *Hill*, 467 F. Supp. 2d at 354 (supervisor's demand that plaintiff verify vacation request with airline ticket, delay in replacing workplace keys, and supervisor's micromanagement do not constitute adverse employment actions); *Figueroa v. City of N.Y.*, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002) (being followed by supervisor is not adverse employment action), *aff'd*, 118 F. App'x 524 (2d Cir. 2004) (summary order); *Castro v. N.Y.C. Bd. of Educ. Pers.*, No. 96-CV-6314, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) ("[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.").

Finally, a transfer may amount to an adverse employment action where it is accompanied by a reduction in pay or benefits.  *See Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y.*, 310 F.3d 43, 51 (2d Cir. 2002).  A lateral transfer that is not accompanied by a reduction in pay or benefits may still be considered adverse where "the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way."  *Id.*; *see Rodriguez v. Bd. of Educ. of Eastchester Union Free Sch. Dist.*, 620 F.2d 362, 366 (2d Cir. 1980) (transfer to elementary school was adverse action where "radical change" to "profoundly different" program

rendered "utterly useless" plaintiff's twenty years of experience and study); *Alvarado v. Metro. Transp. Auth.*, No. 07-CV-3561, 2012 WL 1132143, at *7 (S.D.N.Y. Mar. 30, 2012) ("reassignment [that] would require [plaintiff] to undergo training and recertification and would render largely unusable her eight years of experience" plausibly alleged adverse employment action). Here, it is undisputed that after her transfer to the elementary school Plaintiff retained the same job title and responsibilities, her salary and benefits were never reduced, (*see* P's 56.1 Resp. ¶¶ 71, 73), and she continued to receive raises after her transfer, (*id.* ¶ 72). She provides no facts suggesting that her role there was significantly different from what it had been at the JSHS, let alone in a materially negative way.

Plaintiff argues that the transfer was adverse, however, because she was unable to work as many extended-day hours in her new position. (P's Mem. at 6.) While the "deprivation of the opportunity to earn overtime can be considered a materially adverse employment action" where a plaintiff requested and was denied such opportunities, *Bowen-Hooks*, 13 F. Supp. 3d at 217-18 (collecting cases), at least where accompanied by a material detriment such as lost opportunities for career advancement, *see Lee v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 14-CV-5278, 2016 WL 3542454, at *11 (S.D.N.Y. June 22, 2016), Plaintiff cannot show that she was ever denied the opportunity to work an equivalent number of extended-day hours at the elementary school. It is undisputed that the elementary school offered more extended-day hours than the JSHS. (P's 56.1 Resp. ¶¶ 74-75.) Plaintiff states in conclusory fashion that her position at the elementary school prevented her from working the morning extended hour, (Hoag Aff. ¶ 10), but does not explain why or how. The unrefuted evidence shows, however, that Plaintiff's position did not in fact prevent her from working the 8:00 am to 9:00 am extended hour because her position only required her to work from 9:00 am to 4:00 pm. (Stinehour Aff. ¶¶ 2-3.) Nor

does Plaintiff have any evidence that she requested to work the extended-day hour from 8:00 am to 9:00 am and was denied that opportunity. (*See id.* ¶ 3.) Thus Plaintiff cannot establish that her lateral transfer to the elementary school was materially adverse. *See Bowen-Hooks*, 13 F. Supp. 3d at 218 (denial of overtime opportunities was not adverse action where there was "no evidence that Plaintiff requested overtime . . . and that she was denied overtime," and Plaintiff's only evidence to the contrary was "based on her belief or hunch that, even if she had applied for overtime assignments, she would have been denied overtime"); *Hayle*, 2013 WL 6231164, at *6 (no adverse employment action where "[p]laintiff attribute[d] her lack of overtime to the fact that she did not have access to the Kronos time-keeping system, but fail[ed] to allege how or why her access to Kronos affected her ability to get as much overtime as the other supervisors") (internal quotation marks omitted); *Turley v. ISG Lackawanna, Inc.*, 803 F. Supp. 2d 217, 236 (W.D.N.Y. 2011) (no adverse employment action where plaintiff did not "identify any instance where he was denied requested overtime work so that it could be given to others" and offered, "in conclusory fashion, that he was not informed he could work overtime or was not allowed to work overtime").

Because Plaintiff cannot show she suffered an adverse employment action, and thus cannot establish a *prima facie* case of disparate treatment on account of her sex, her claims for discrimination under an adverse action theory must fail.

2. Hostile Work Environment

Plaintiff also claims that she was subjected to a hostile work environment on account of her sex. Like claims for discrimination under an adverse action theory, the standard for hostile work environment claims is the same whether brought under Title VII or NYSHRL. *See Smith*,

798 F. Supp. 2d at 451 ("The standard for showing a hostile work environment under Title VII . . . and the New York State Human Rights Law is essentially the same.").

> [T]o establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  In considering whether a plaintiff has met this burden, courts should examine the totality of the circumstances, including:  the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance.

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (citations, alterations, and internal quotation marks omitted).  The "test has objective and subjective elements:  the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted).  "A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

"To decide whether the [hostile work environment] threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Alfano*, 294 F.3d at 374.  "Pervasive" harassment is harassment that is "more than episodic," and instead "continuous and concerted." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (internal quotation marks omitted).  "The environment," however, "need not be unendurable or intolerable." *Feingold*, 366 F.3d at 150 (internal quotation marks omitted).  "[T]he fact that the law requires harassment to be severe or pervasive before it can be

actionable does not mean that employers are free from liability in all but the most egregious cases." *Id.* (internal quotation marks omitted).

Once a plaintiff has established the existence of a hostile workplace, she must then demonstrate that the harassing conduct that "created the hostile situation should be imputed to the employer." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992). Where the hostile environment is created by a nonsupervisory coworker, the employer is liable only if it was negligent in controlling the working conditions. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). An employee is considered a supervisor "only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2443 (internal quotation marks omitted). The employer's vicarious liability for nonsupervisory coworkers depends on a showing that the employer knew, or reasonably should have known, about the harassment but failed to take appropriate remedial action. *Petrosino*, 385 F.3d at 225. "The appropriateness of an employer's remedial action must be assessed from the totality of the circumstances." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014) (internal quotation marks omitted).

Plaintiff has identified a number of allegedly discriminatory acts that she contends amounted to a hostile work environment:

- the District's failure to adequately address Redmond's harassing behavior following Plaintiff's report in March 2011, (P's Mem. at 5);

- in March or April 2011, Williams told Hoag "if this were 50 years ago" she would have been fired (rather than Redmond suspended) because she was "the woman" in the relationship, (D's 56.1 Reply ¶ 81);

- derogatory comments about Plaintiff in June 2011 by basketball players coached by Redmond, (P's 56.1 Resp. ¶¶ 30, 32(a));

- the District's failure to promote Plaintiff to teacher after Savone's retirement in June 2012, (D's 56.1 Reply ¶ 86; Evans Aff. ¶ 3);

- sometime during the fall of 2012, Shapiro advised Parker (who relayed the comments to Plaintiff) that Parker should stay away from Plaintiff because she gets people fired, (P's 56.1 Resp. ¶ 37);

- in September or October 2012, Principal Williams began appearing at her classroom and "checking to see if [she] was where [she] was supposed to be," (P's Dep. at 42-43);

- from March or April to June 2013, Superintendent Katz would check in on Plaintiff while she used the District's weight room, (P's 56.1 Resp. ¶ 48);

- being asked by the District in September 2013 to participate in its investigation of Redmond's inappropriate contact with students, (*id.* ¶¶ 55-56);

- after learning that Plaintiff refused to participate in the 2013 investigation of Redmond, Williams said something to the effect that Plaintiff had "burned her bridges," (D's 56.1 Reply ¶ 91);

- Redmond and Plaintiff had lunch duty at the same time sometime in the latter part of the 2013/2014 school year, (P's 56.1 Resp. ¶ 76);

- on August 17, 2014, Plaintiff was notified that she was being transferred to the elementary school, (*id.* ¶ 70).[8]

a. *Imputing Conduct to the District*

Three of these acts cannot be attributed to the District:  comments by the basketball players, comments by Shapiro, and harassment by Redmond.  First, Defendant's vicarious liability for the basketball players' comments is considered under the same negligence standard as for comments made by non-supervisory coworkers.  *See Berger-Rothberg v. City of N.Y.* 803 F. Supp. 2d 155, 164-65 (E.D.N.Y. 2011) ("To prove a hostile work environment claim based on

---

[8] Plaintiff also identified that on September 9, 2013, Plaintiff informed her union representative Lindsey and Principal Williams that her schedule afforded her insufficient break time, (P's 56.1 Resp. ¶ 52), which Williams corrected the same day, (*id.* ¶ 53).  This event does not factor into my analysis because it is plainly neither hostile nor retaliatory, and thus "support[s] no inference of mistreatment." *Alfano*, 294 F.3d at 376.

student-on-teacher harassment, a plaintiff must show 'first that a hostile environment existed and second that the school board either provided no reasonable avenue of complaint or knew of the harassment and failed to take appropriate remedial action.'") (quoting *Peries v. N.Y.C. Bd. of Educ.*, No. 97-CV-7109, 2001 WL 1328921, at *6 (E.D.N.Y. Aug. 6, 2001)). "Title VII simply requires that the remedial action taken be reasonably calculated to end the sexual harassment." *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 495 (S.D.N.Y. 2000). Here, it is undisputed that, after Plaintiff informed Principal Williams and Nurse Lindsey of the comments, and both of them advised the basketball players that the comments were inappropriate, the comments ceased. (P's 56.1 Resp. ¶¶ 31, 32(b), 33(a).) Because Plaintiff acknowledges that the comments stopped after Williams and Lindsey talked to the players, no reasonable jury could find that the remedial action taken was not effective, and thus the Defendant cannot be held liable for the basketball players' comments. *See Seale v. Madison Cty.*, No. 11-CV-278, 2015 WL 667531, at *17 (N.D.N.Y. Feb. 17, 2015) (finding no vicarious liability for coworker's harassment where employer provided reasonable avenue of complaint and employee experienced no further harassment after employer learned of harassment); *Berger-Rothberg*, 803 F. Supp. 2d at 165 (denying school district summary judgment where teacher disputed adequacy of district's remedial actions, and harassment intensified after it was reported); *Godineaux v. Laguardia Airport Marriott Hotel*, 460 F. Supp. 2d 413, 423 (E.D.N.Y. 2006) (finding no vicarious liability where harassing coworker was not a supervisor and employer investigated the matter and took appropriate remedial action by warning harasser, and unwanted behavior stopped).

Second, the District cannot be liable for Shapiro's comment to Parker because Plaintiff cannot show that the District was aware of Shapiro's comment and failed to take proper remedial action. *See Petrosino*, 385 F.3d at 225. It is undisputed that Plaintiff did not report Shapiro's

conduct to either Katz or Williams in the fall of 2012. (P's 56.1 Resp. ¶ 38.)[9] It is also

undisputed that Plaintiff reported the comments to her union representative, Lindsey, but did not

ask her to do anything in response or communicate anything to the District. (*Id.* ¶ 39.) The

District cannot be liable for a comment made by Plaintiff's coworker where Plaintiff never

reported the comment to anyone at the District. *See Toyama v. Hasaki Rest., Inc.*, No. 13-CV-

4892, 2014 WL 7234602, at *3 (S.D.N.Y. Dec. 18, 2014) (sexual harassment by plaintiff's

coworker could not be imputed to defendant where "Plaintiff testified that she never reported the

alleged . . . incident to her superiors or to anyone else").[10]

Third, the District cannot be liable for Redmond's harassment because it took proper

remedial action. As discussed above, an employer is liable for harassment by a nonsupervisory

coworker if it knew or reasonably should have known about the harassment and failed to take

appropriate remedial action. *See Petrosino*, 385 F.3d at 225. Such action need only be

reasonably calculated to end the harassment. *See Cooper*, 106 F. Supp. 2d at 495. After Plaintiff

reported Redmond's harassing behavior, he was immediately placed on leave, (P's 56.1 Resp.

¶ 21), the District investigated and determined that Plaintiff's allegations were founded, (*id.*

¶¶ 22-23), and the District rescinded its grant of tenure to Redmond, issued him a formal written

---

[9] In response to Defendant's assertion that Plaintiff did not report Shapiro's comments to Katz or Williams in the fall of 2012, Plaintiff claims only that she "did personally report the conduct" to them, but she does not dispute that she did not tell them in the fall of 2012 when she learned of the comments, and she cites nothing from the record to support her statement. (P's 56.1 Resp. ¶ 38.) Accordingly, I take the Defendant's statement as true for the purposes of this motion.

[10] Even if Lindsey had told the District about Shapiro's comment, the behavior was not repeated, (P's 56.1 Resp. ¶ 40), so whatever steps the District may have taken were effective in ending the harassment, *see Audrey v. Career Inst. of Health & Tech.*, No. 06-CV-5612, 2014 WL 2048310, at *3 (E.D.N.Y. May 18, 2014) (remedial action "need only be sufficiently calculated to end the harassment") (internal quotation marks omitted); *Audrey v. Career Inst. of Health & Tech.*, No. 06-CV-5612, 2010 WL 10094570, at *12 (E.D.N.Y. Jan. 12, 2010) (refusing to impute liability to employer that did not conduct thorough investigation into alleged harassment by plaintiff's supervisor and took no punitive action because "there is no legal requirement that an employer discipline employees where it succeeds in eradicating the offensive behavior from the workplace by other means") (internal quotation marks omitted), *report and recommendation adopted*, No. 06-CV-5612, 2014 WL 2048310 (E.D.N.Y. May 18, 2014); *Chenette v. Kenneth Cole Prods., Inc.*, No. 05-CV-4849, 2008 WL 3176088, at *11 (S.D.N.Y. Aug. 6, 2008) (rejecting argument that defendant's response was inadequate merely because it took no punitive action).

reprimand, moved his classroom away from Plaintiff's, required him to attend harassment training, and warned him that additional incidents could lead to discharge, (*id.* ¶¶ 26-28). It is undisputed that Redmond's harassment ceased thereafter. (*Id.* ¶ 29.) Despite Plaintiff's conclusory claim that the District failed to adequately address the harassment, (P's Mem. at 5), it is clear that the District took appropriate steps that in fact ended the harassment, and thus there is no basis for imputing liability to the District. *Compare Cromwell-Gibbs v. Staybridge Suite Times Square*, No. 16-CV-5169, 2017 WL 2684063, at *6 (S.D.N.Y. June 20, 2017) (where plaintiff's coworker emailed video with racial slur, and no further incidents occurred thereafter, employer was not liable because supervisor promptly reprimanded coworker), *with Delsasso v. 1249 Wine Bar*, No. 14-CV-63, 2017 WL 1234110, at *4-5 (D. Conn. Mar. 31, 2017) (denying summary judgment where plaintiff presented evidence that harassment continued even after employer addressed sexual harassment at staff meeting following plaintiff's complaint); *Sullivan v. Newburgh Enlarged Sch. Dist.*, 281 F. Supp. 2d 689, 706-07 (S.D.N.Y. 2003) (denying summary judgment where District investigated reported incidents of harassment as soon as it became aware of the matter, in accordance with written policy, but failed to look into prior complaints of similar behavior).

### b. *Connection to Membership in Protected Class*

Allegations of unfair treatment directed at a member of a protected class do not create a fact issue for trial absent a basis to conclude that that unfair treatment arose *because of* the victim's membership in that class. *See Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) ("Even if [plaintiff's] highly dubious claim that he was unfairly singled out for punishment by the instructors is credited, [plaintiff] has done little more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to his race.") (alterations and internal

quotation marks omitted); *Varughese v. Mount Sinai Med. Ctr.*, No. 12-CV-8812, 2015 WL 1499618, at *42, 63 (S.D.N.Y. Mar. 27, 2015) ("fallacy" for plaintiff to say: "I belong to a protected class; something bad happened to me at work; therefore, it must have occurred because I belong to a protected class") (internal quotation marks omitted).

First, Plaintiff has not presented any basis from which to conclude that Williams's checking in on Plaintiff's classroom and Katz's checking in on Plaintiff's use of the weight room occurred because of her sex. It is undisputed that Williams told Plaintiff he was checking in on Plaintiff's classroom because another employee had reported that Plaintiff was leaving work early, (P's 56.1 Resp. ¶ 42), and Plaintiff acknowledged that Williams was checking in on her "to see if [she] was where [she] was supposed to be," (P's Dep. at 42-43). Likewise, while it is undisputed that Katz would check in on Plaintiff while she used the District's weight room, (P's 56.1 Resp. ¶ 48), it is also undisputed that the District's policy required anyone using the weight room to be accompanied by another, (*id.* ¶ 49). Katz stated that he would regularly check to see that this policy was being enforced and did not single Plaintiff out. (Katz Aff. ¶ 16.) Plaintiff's subjective feeling – unsupported by record evidence – that Williams's and Katz's actions were "clearly meant to intimidate," (P's Mem. at 8), is not enough for a reasonable juror to infer animus based on Plaintiff's sex.

Further, there is no evidence from which a reasonable juror could infer discrimination based on sex with respect to the District's elimination of Savone's teaching position in 2012. It is undisputed that the position was eliminated before Plaintiff ever indicated interest, let alone submitted an application. (*See* P's Dep. at 88-89.) Notwithstanding Plaintiff's feeling that any application would have been futile, there is no evidence in the record to support a finding that the District's elimination of the position was something done to Plaintiff, let alone done to her

because of her sex. Likewise, there is no evidence from which a reasonable juror could infer discrimination based on sex with respect to Plaintiff's transfer to the elementary school. As discussed above, it is undisputed that Plaintiff retained the same job title, responsibilities, salary, and benefits. (*See* P's 56.1 Resp. ¶¶ 71, 73.) Her only complaint regarding the transfer is that the elementary school's schedule prevented her from working as many extended-day hours as she could at the JSHS. Even if this were supported by the record (which it is not), Plaintiff has offered no evidence that could support the inference that the District transferred her – knowing her schedule would somehow prevent her from working as many extended-day hours – because of her sex.[11]

           c. *Objectively Hostile Work Environment*

As to the remaining events – Williams's "50 years ago" comment in 2011, the District's request that Plaintiff participate in the 2013 investigation of Redmond, Williams's comment in 2013 that Plaintiff had "burned her bridges" after her refusal to participate in that investigation, and the scheduling of Redmond to Plaintiff's lunch duty in the spring of 2014 – Plaintiff has failed to establish that together they amount to an objectively hostile work environment. No reasonable jury could conclude that two arguably insensitive comments over the course of three years,[12] a request that Plaintiff be a witness in an investigation of a coworker, and being brought into contact with someone Plaintiff would have rather have avoided[13] are "so severe as to alter

---

[11] I recognize that "[f]acially neutral incidents may be included . . . among the totality of the circumstances that courts consider in any hostile work environment claim" where there is some basis for a rational fact-finder to "conclude that they were, in fact, based on sex." *Alfano*, 294 F.3d at 378 (internal quotation marks omitted). As discussed above, the record here contains no such basis.

[12] It is hard to see how the "50 years ago" remark, which recognizes what may be a sad truth, is hostile. "[S]tatements that merely acknowledge an individual's membership in a protected class do not support an inference of discriminatory animus." *Shaw v. McHugh*, No. 12-CV-6834, 2015 WL 1400069, at *10 (S.D.N.Y. Mar. 26, 2015), *aff'd*, 641 F. App'x 95 (2d Cir. 2016) (summary order).

[13] Further, it is undisputed that Plaintiff never raised the lunch schedule issue with anyone from the District. (P's 56.1 Resp. ¶ 78.) Although Plaintiff avers that she was "unable to complain to Principal Williams as he was not

the terms and conditions of [P]laintiff's employment." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). Accordingly, Plaintiff has failed to establish that she was subject to a hostile work environment. *See Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 945 (2d Cir. 2008) (summary order) (derogatory language from supervisor, dismissive comments from management, and intense scrutiny of plaintiff together were "insufficiently severe and pervasive" to create hostile work environment); *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("Generally, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") (internal quotation marks omitted); *Kearse v. ATC Healthcare Servs.*, No. 12-CV-233, 2014 WL 958738, at *8-9 (S.D.N.Y. Mar. 11, 2014) (repeated reprimands in front of other coworkers, keeping plaintiff at work past end of shift, ignoring plaintiff's questions about his paychecks, supervisors' restricting of plaintiff's use of his paid time off, and comment that plaintiff was getting married to avoid paying child support together did not amount to hostile work environment); *Salerno v. City Univ. of N.Y.*, No. 99-CV-11151, 2003 WL 22170609, at *10 (S.D.N.Y. Sept. 18, 2003) ("four isolated incidents spanning a ten-year period" did not amount to hostile work environment).

## C. Retaliation

Plaintiff claims that she was retaliated against for her 2011 complaint regarding Redmond's harassment, her September 2013 complaint after being asked to participate in the 2013 investigation of Redmond, and her 2013 EEOC complaint. (P's Mem. at 10-11.)

Retaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); *Ghaly v. U.S. Dep't of Agric.*, 739 F. Supp. 2d 185, 198-99 (E.D.N.Y. 2010). First, Plaintiff bears the

---

speaking to Ms. Hoag" at the time in light of her EEOC claim, (*id.*), Plaintiff could have raised the issue with any other member of the District's staff, including Katz, but did not.

burden of establishing a *prima facie* case of discrimination, which requires her to show that: (1) she was engaged in activity protected under anti-discrimination statutes; (2) Defendant was aware of her participation in the protected activity; (3) Defendant took adverse action against her; and (4) there is a causal connection between her protected activity and the adverse action taken by Defendant. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). The burden of proof at this stage is "*de minimis*," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010), "but it is not non-existent," *Pleener v. N.Y.C. Bd. of Educ.*, No. 05-CV-973, 2007 WL 2907343, at *11 (E.D.N.Y. Oct. 4, 2007) (internal quotation marks omitted), *aff'd*, 311 F. App'x 479 (2d Cir. 2009) (summary order). If the plaintiff meets this burden, "a presumption of retaliation arises," and to succeed the defendant must offer a legitimate, non-retaliatory reason for its actions. *Jute*, 420 F.3d at 173. If the employer produces evidence of a non-retaliatory justification for the adverse employment action, the plaintiff must demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is pretext for retaliation. *See id.*

The District argues that Plaintiff fails to establish a *prima facie* case because she cannot show that she suffered an adverse employment action. To establish an adverse employment action in the context of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). "Title VII is not a general 'bad acts' statute," *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (internal quotation marks omitted), and "'[p]etty slights or minor annoyances that often take place at work and that all employees experience' do not constitute

actionable retaliation," *Hicks*, 593 F.3d at 165 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).

1. 2011 Complaint

Plaintiff argues that following her 2011 complaint about Redmond's harassment, she was "suddenly subjected to systematic harassment and retaliation by Defendant that continued over the course of the next two and one-half years of her employment." (P's Mem. at 10.) To establish, as Plaintiff contends here,

> that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment.

*Rasco v. BT Radianz*, No. 05-CV-7147, 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009); *see Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) ("[U]nchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation *prima facie* case."). As discussed above, Plaintiff has failed to establish that she was subjected to a hostile work environment, and thus has failed to show she suffered an adverse employment action as a result of her 2011 complaint.[14]

---

[14] Even considering the conduct that I excluded from consideration of the discriminatory hostile work environment claim because it was unrelated to Plaintiff's membership in a protected class – the District's elimination of Javone's position in June 2012, Williams's checking in on Plaintiff's classroom in the fall of 2012, and Katz's checking in on Plaintiff's weight room use in the spring of 2013 – Plaintiff's claim would still fail. The elimination of Javone's position was an isolated incident, *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (isolated instances do not generally suffice to show hostile work environment), and being checked on by a supervisor is a "mundane . . . travail[]" that does not suffice for a retaliatory hostile work environment claim, *see Marquez v. City of N.Y.*, No. 14-CV-8185, 2016 WL 4767577, at *14 (S.D.N.Y. Sept. 12, 2016) (collecting cases). And in any event, those events occurred so far after her March 2011 complaint that no inference of causal connection can arise. *See Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503-04 (S.D.N.Y. 2010) ("Most of the decisions in this Circuit that have addressed this issue have held that lapses of time shorter than even three months are insufficient to support an inference of causation.") (collecting cases).

2.  <u>2013 Complaints</u>

Plaintiff claims that in retaliation for her internal complaint and EEOC complaint after being asked to participate in the 2013 investigation of Redmond, Williams commented that she had burned her bridges and she was transferred to the elementary school.  (P's Mem. at 10-11.)  First, Williams's comment "does not rise to [the] level of severity to support an actionable retaliation claim."  (Doc. 37 at 16.)  No reasonable jury could conclude that one offhand comment would dissuade a reasonable employee from complaining about discriminatory conduct.  *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2d Cir. 2010) (threat of termination that was never carried out amounted to only "petty slight[] or minor annoyance[]") (internal quotation marks omitted).

Second, Plaintiff has not established that her transfer to the elementary school was an adverse employment action.  While the standard for adverse employment action in the retaliation context is "distinct from and broader than the standard in the Title VII discrimination context," *Krachenfels v. N. Shore Long Island Jewish Health Sys.*, No. 13-CV-243, 2014 WL 3867560, at *17 (E.D.N.Y. July 29, 2014), I find that Plaintiff cannot meet even that broader standard.  Plaintiff contends that her transfer was adverse because it reduced the number of extended-day hours she was able to work.  But as discussed above, this contention is not supported by evidence in the record.  Plaintiff has offered no other evidence that her job responsibilities were diminished, that teaching at the elementary school was less prestigious than teaching at the JSHS, that her transfer was tantamount to a demotion, or that there was any other meaningful difference between her jobs at the two schools.  *See Ward v. Conn. Dep't of Pub. Safety*, No. 06-

CV-1936, 2009 WL 179786, at *11 (D. Conn. Jan. 21, 2009) (transfer was not materially adverse for purposes of retaliation claim where "[p]laintiff ma[de] no allegations that the transfer involved a loss of benefits, a change in responsibility, or a less distinguished position"). That Plaintiff was inconvenienced by the transfer, or that she would have preferred to stay on at the JSHS, are insufficient to render her transfer adverse because the standard is an objective one. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 71 ("To be sure, reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.") (internal quotation marks omitted); *Taylor v. N.Y.C. Dep't of Educ.*, No. 11-CV-3582, 2012 WL 5989874, at *10 (E.D.N.Y. Nov. 30, 2012) ("The courts in this Circuit have generally declined to find that transfers . . . amount to adverse employment actions, even in the context of a retaliation claim, where the action results merely in an inconvenience, such as an increased commute or unfavorable hours.") (internal quotation marks omitted).[15] Accordingly, Plaintiff has failed to establish a *prima facie* case of retaliation, and her retaliation claims thus fail.

---

[15] Further, Plaintiff has failed to establish a causal connection between her 2013 complaints and her subsequent transfer. Williams's "bridges" comment does not support an inference of causal connection because it is undisputed that he was not the decisionmaker with respect to Plaintiff's transfer. (P's 56.1 Resp. ¶ 67.) And the nine months between Plaintiff's EEOC complaint and receiving notice of the transfer is too long to support an inference of causal connection based on temporal proximity. *See Walder*, 738 F. Supp. 2d at 503-04.

## III.  CONCLUSION

For the reasons stated above, Defendants' motion is GRANTED.  The Clerk of Court is

directed to terminate the pending motion, (Doc. 28), and close the case.

**SO ORDERED.**

Dated:  September 5, 2017
        White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.